```
 1                    UNITED STATES DISTRICT COURT
 2                    SOUTHERN DISTRICT OF TEXAS
 3                      CORPUS CHRISTI DIVISION

 4  UNITED STATES OF AMERICA           .
                                       .  Criminal Action
 5  VERSUS                             .  No. C-13-CR-355
                                       .
 6  HARLEY MICHAEL PETERSON,           .  Corpus Christi, Texas
                                       .  September 16, 2013
 7                                     .  9:45 a.m.
                      Defendant.       .
 8  . . . . . . . . . . . . . . . . . .

 9
                       TRANSCRIPT OF PROCEEDINGS
10
             BEFORE THE HONORABLE JOHN D. RAINEY
11
                          **REARRAIGNMENT**
12
    APPEARANCES:
13
    FOR THE UNITED STATES OF AMERICA:
14
             Mr. Lance Duke
15           Assistant United States Attorney
             UNITED STATES ATTORNEY'S OFFICE
16           800 North Shoreline
             Suite 500
17           Corpus Christi, Texas  78401
             361.888.3111
18           FAX:  361.888.3200
             Lance.Duke@usdoj.gov
19
    FOR THE DEFENDANT:
20
             Ms. Lila Michelle Garza
21           Assistant Federal Public Defender
             FEDERAL PUBLIC DEFENDER'S OFFICE
22           606 North Carancahua
             Suite 401
23           Corpus Christi, Texas  78401-0697
             361.888.3532
24           lila_garza@fd.org

25          PROCEEDINGS RECORDED BY STENOGRAPHIC MEANS,
       TRANSCRIPT PRODUCED FROM COMPUTER-AIDED TRANSCRIPTION


             Gayle Dye, CSR, RDR, CRR - 713.250.5582
```

**THIS TRANSCRIPT HAS BEEN FURNISHED AT PUBLIC EXPENSE UNDER THE CRIMINAL JUSTICE ACT AND MAY BE USED ONLY AS AUTHORIZED BY COURT ORDER. UNAUTHORIZED REPRODUCTION WILL RESULT IN AN ASSESSMENT AGAINST COUNSEL FOR THE COST OF AN ORIGINAL AND ONE COPY AT THE OFFICIAL RATE.**

**GENERAL ORDER 94-15, UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF TEXAS.**

COURT REPORTER:

    GAYLE L. DYE, CSR, RDR, CRR
    515 Rusk, Room 8016
    Houston, Texas  77002
    713.250.5582

```
 1                    PROCEEDINGS
 2                    September 16, 2013
 3              THE COURT:  Last matter on this first docket is
 4  C-13-355, United States of America versus Harley Peterson.
 5              Mr. Peterson, I'm going to have you placed under
 6  oath to start with.  I'm going to warn you that, if you testify
 7  falsely, that testimony could be used against you in another
 8  prosecution for perjury.
 9              Do you understand that?
10              THE DEFENDANT:  Yes, sir, I do.
11              THE COURT:  Raise your right hand as best you can and
12  she'll administer an oath to you.
13      (The Defendant was sworn.)
14              THE COURT:  Mr. Peterson, have you ever been diagnosed
15  with any type of mental illness?
16              THE DEFENDANT:  I believe I have, at least three.
17              THE COURT:  What was the diagnosis?
18              THE DEFENDANT:  Bipolar, depression, and ADHD.
19              THE COURT:  How long ago was that diagnosis made?
20              THE DEFENDANT:  When I was 18 years old.  So, four
21  years ago.
22              THE COURT:  Okay.  Did you receive any kind of
23  treatment for it?
24              THE DEFENDANT:  Yes.  I've done counselling and I've
25  had psych meds.
```

```
                            4
```

|  |  |
|---|---|
| 1 | THE COURT: Took meds? |
| 2 | THE DEFENDANT: Yeah. |
| 3 | THE COURT: Did it help? |
| 4 | THE DEFENDANT: At the time, yeah. |
| 09:46:09  5 | THE COURT: All right. Well, anything about that condition that would impair your ability to understand what you're doing here today or cause you to be confused in any way? |
| 8 | THE DEFENDANT: No. |
| 9 | THE COURT: Okay. Are you taking any other type of medication that might cause you to be confused today? |
| 11 | THE DEFENDANT: No. |
| 12 | THE COURT: Are you a heavy drug user? |
| 13 | THE DEFENDANT: No. |
| 14 | THE COURT: Okay. How old are you? |
| 09:46:28  15 | THE DEFENDANT: 22. |
| 16 | THE COURT: How far did you go in school? |
| 17 | THE DEFENDANT: All the way to graduate 12th grade. |
| 18 | THE COURT: Where from? |
| 19 | THE DEFENDANT: A school called ALC. It was a behavioral school up north. |
| 21 | THE COURT: Okay, all right. Did you receive a copy of your indictment? |
| 23 | THE DEFENDANT: Yes. |
| 24 | THE COURT: Did you read it? |
| 09:46:45  25 | THE DEFENDANT: Yes. |

---

```
                                                          4

                1         THE COURT: Took meds?
                2         THE DEFENDANT: Yeah.
                3         THE COURT: Did it help?
                4         THE DEFENDANT: At the time, yeah.
     09:46:09   5         THE COURT: All right. Well, anything about that
                6    condition that would impair your ability to understand what
                7    you're doing here today or cause you to be confused in any way?
                8         THE DEFENDANT: No.
                9         THE COURT: Okay. Are you taking any other type of
     09:46:20  10    medication that might cause you to be confused today?
               11         THE DEFENDANT: No.
               12         THE COURT: Are you a heavy drug user?
               13         THE DEFENDANT: No.
               14         THE COURT: Okay. How old are you?
     09:46:28  15         THE DEFENDANT: 22.
               16         THE COURT: How far did you go in school?
               17         THE DEFENDANT: All the way to graduate 12th grade.
               18         THE COURT: Where from?
               19         THE DEFENDANT: A school called ALC. It was a
     09:46:40  20    behavioral school up north.
               21         THE COURT: Okay, all right. Did you receive a copy
               22    of your indictment?
               23         THE DEFENDANT: Yes.
               24         THE COURT: Did you read it?
     09:46:45  25         THE DEFENDANT: Yes.


                          Gayle Dye, CSR, RDR, CRR - 713.250.5582
```

|  |  |
|---|---|
| | |

```
                                                                5

           1            THE COURT:  Did you discuss it with Ms. Garza?
           2            THE DEFENDANT:  Yes.
           3            THE COURT:  Do you understand the charges against you?
           4            THE DEFENDANT:  Yes.
09:46:50   5            THE COURT:  Are you satisfied with her representation
           6  of you?
           7            THE DEFENDANT:  Yes.
           8            THE COURT:  The offense which you will be pleading to,
           9  if you persist in that plea, carries a range of punishment of
09:47:11  10  not less than ten years up to life in prison.  You could be
          11  fined up to $250,000.  You would be placed on supervised release
          12  for not less than five years up to life.  And there's a $100
          13  special assessment.  There's also -- there would be a
          14  requirement for sex offender registration.
09:47:35  15            Do you understand the range of punishment for
          16  this offense?
          17            THE DEFENDANT:  Yes.
          18            THE COURT:  When you are released from incarceration
          19  and you're placed on supervision, you will be required to follow
09:47:46  20  the rules which have been adopted by this Court.  If you violate
          21  any of those rules, your release would be revoked and you could
          22  be ordered to serve some more time in prison even though you've
          23  already completed your initial sentence.
          24            Do you understand the consequences of violating
09:47:58  25  supervised release?
```

Gayle Dye, CSR, RDR, CRR - 713.250.5582

1 THE DEFENDANT: Yes.

2 THE COURT: Mr. Peterson, I'm going to sentence you
3 several weeks from now. Before I sentence you, I will have a
4 presentence investigation report prepared in accordance with the
09:48:09  5 United States Sentencing Guidelines.

6 THE DEFENDANT: Okay.

7 THE COURT: It's prepared by a probation officer who
8 will interview you, gather information for the report. You may
9 have Ms. Garza present when you're interviewed.

09:48:18  10 THE DEFENDANT: Okay.

11 THE COURT: Once it's been prepared, it will be
12 delivered to her who will bring it to your attention. I suggest
13 that you read it. If not, be sure she reads it to you
14 carefully, point out any mistakes in the report to her. She
09:48:27  15 will help you file any objections, if necessary; and if the
16 probation officer cannot resolve them, I will rule on them at
17 your sentencing hearing.

18 Once I've made any necessary rulings, an advisory
19 guideline range will be established for your case subject, of
09:48:42  20 course, to any minimum mandatory that might apply. Even though
21 it's advisory, I must carefully consider it when I determine
22 your punishment. I advise you that there are only limited
23 circumstances under which you or the Government can appeal any
24 sentence that I give you.

09:48:56  25 There is no parole in the federal system; and if

1  the sentence I impose is worse than you are expecting, you're
2  not going to be allowed to change your mind and withdraw your
3  plea of guilty for that reason.
4              Do you understand all that?
[09:49:09] 5        THE DEFENDANT:  Yes.
6              THE COURT:  Any questions about the sentencing
7  process?
8              THE DEFENDANT:  No, sir.
9              THE COURT:  You do not have to plead guilty.  You can
[09:49:14] 10 plead not guilty which entitles you to have a trial by jury.
11 You're entitled to be represented by a lawyer at that trial.
12 One will be appointed if you couldn't afford one.
13             At the trial, your lawyer, acting on your behalf,
14 can cross examine witnesses called by the Government; and then,
[09:49:28] 15 once the Government has rested its case, you can call witnesses;
16 and if they do not want to come to court, you can have subpoenas
17 issued to force them to do that.
18             You have a right to testify, but you also can
19 choose not to, and the Government cannot call you as a witness.
[09:49:41] 20 If you did not testify, it's my duty to instruct the jury that
21 the fact that you did not testify is not evidence which the jury
22 may consider in later determining your guilt or innocence.
23             In a few minutes, I'm going to ask you here in
24 open court how you plead.  If you persist in entering a plea of
[09:49:58] 25 guilty at that time, you will have waived your right to a trial

`09:50:07`

`09:50:22`

`09:50:41`

`09:50:52`

`09:51:09`

1  by jury, as well as the other rights that I just described for
2  you.
3              Do you understand all that?
4              THE DEFENDANT:  Yes, sir.
5              THE COURT:  The elements of your offense -- this is
6  what the Government must establish beyond a reasonable doubt.  I
7  know you've discussed these with Ms. Garza, but I have to go
8  over them with you in open court to make sure you understand the
9  Government's burden and what they must prove.
10             First of all, the Government must establish that
11 you knowingly persuaded, induced, enticed, coerced, or attempted
12 to persuade, induce, entice, or coerce an individual to engage
13 in any sexual activity or prostitution as charged; that you knew
14 -- that you used the Internet.  It could be the mail, telephone,
15 cell phone, or any facility or means of interstate or foreign
16 commerce to do so.
17             Third element is that you believed that such
18 individual was less than 18 years of age.
19             And the fourth element is that you -- that had
20 the sexual activity actually occurred, you could be charged with
21 a criminal offense of sexual assault of a child through the laws
22 of Texas.  That would come under Texas Penal Code Section
23 22.011.
24             Sexual assault of a child under that section of
25 the Texas Penal Code provides that any person commits an offense

|           |    |                                                                      |
|-----------|----|----------------------------------------------------------------------|
|           | 1  | if the person intentionally or knowingly causes the penetration      |
|           | 2  | of the anus or sexual organ of a child by any means; causes the      |
|           | 3  | penetration of the mouth of a child by the sexual organ of the       |
|           | 4  | actor; causes the sexual organ of a child to contact or              |
| 09:51:28  | 5  | penetrate the mouth, anus, or sexual organ of another person,        |
|           | 6  | including the actor; causes the anus of a child to contact the       |
|           | 7  | mouth, anus, or sexual organ of another person, including the        |
|           | 8  | actor; or causes the mouth of a child to contact the anus or         |
|           | 9  | sexual organ of another person, including the actor.                 |
| 09:51:43  | 10 |            Do you understand the elements of this offense?           |
|           | 11 |      THE DEFENDANT:  Yes.                                            |
|           | 12 |      THE COURT:  Mr. Duke is going to describe the facts             |
|           | 13 | related to your case and your involvement in this matter.            |
|           | 14 | Listen carefully to what he says.                                    |
| 09:51:56  | 15 |      MR. DUKE:  Your Honor, the Government can lawfully              |
|           | 16 | prove that on August the 3rd of 2012, Corpus Christi Police          |
|           | 17 | Department officers responded to a runaway child call here in        |
|           | 18 | Corpus Christi, Texas.  The victim's grandmother, Goldie Wooten      |
|           | 19 | (phonetic spelling), who is present in the courtroom today,          |
| 09:52:13  | 20 | explained that her granddaughter, who I'll refer to as Jane Doe,     |
|           | 21 | had left the residence without permission with an unidentified       |
|           | 22 | male in a taxi cab.                                                  |
|           | 23 |            Through the grandmother's and the family's                |
|           | 24 | search, they were able to determine that Jane Doe had had a          |
| 09:52:35  | 25 | Facebook profile; and on that Facebook profile, she had been         |

1  communicating with Harley Peterson who was from Toledo, Ohio.
2  On August the 4th of 2012, Jane Doe was located
3  in the company of Mr. Peterson here in Corpus Christi, Texas.
4  Jane Doe was then taken to the Driscoll Children's Hospital
5  where she admitted to having engaged in sexual activity,
6  specifically, intercourse with Mr. Peterson.
7  The child was then sent to live with her
8  biological mother in Germantown, Maryland. The investigation
9  continued through law enforcement in Maryland. In Maryland, a
10 police detective by the name of Tracy Copeland (phonetic
11 spelling) spoke to Jane Doe regarding her relationship with
12 Peterson.
13 Jane Doe admitted to having met Peterson on the
14 Internet in June of 2012. Their communications went from online
15 chats to telephone calls to online video chat sessions, some of
16 which involved sexually explicit activity on the Internet.
17 Jane Doe admitted that Mr. Peterson had discussed
18 traveling to Texas to meet with Jane Doe. Specifically, on
19 August the 3rd of 2012, Peterson called Jane Doe and told her
20 that he was in Corpus Christi, Texas. Peterson then arrived at
21 Jane Doe's home in a taxi cab and the two went off together.
22 The investigation into Mr. Peterson's background
23 in Ohio, we spoke to several friends of Mr. Peterson, all of
24 which stated that Mr. Peterson was aware that Jane Doe was, in
25 fact, a minor child, that is, a person less than 18 years of

1  age. Jane Doe is, in fact -- or was, in fact, at the time of
2  this offense 15 years of age.
3              The friend of Mr. Peterson's in Ohio advised
4  Mr. Peterson that it would be a mistake for him to travel to
5  Corpus Christi, Texas, to meet up with Jane Doe. Nevertheless,
6  Mr. Peterson did, in fact, travel to Texas for that purpose.
7              In November of 2012, Corpus Christi police
8  detectives interviewed Mr. Peterson after advising him of his
9  rights. Mr. Peterson in a videotaped interview admitted to
10 knowing that Jane Doe was 15 years of age. Mr. Peterson further
11 admitted to chatting with Jane Doe via Facebook and something
12 called Gaia Online dot-com.
13             Gaia Online dot-com is a gamer online community
14 for persons that play video games over the Internet. It is not
15 specifically a website oriented for sexual activity. You can
16 place messages on there through message boards. It is open to
17 persons 13 years of age and older.
18             Mr. Peterson admitted to traveling from Ohio to
19 Texas, specifically, for the purpose of meeting with Jane Doe.
20 He admitted to having engaged in sexual intercourse with Jane
21 Doe. He further admitted to knowing that it was illegal for him
22 to do so, and he provided his computer to the detectives for
23 forensic review.
24             A forensic review of that computer led to the
25 discovery of several chats between Mr. Peterson and Jane Doe. A

```
09:56:40
09:56:58
09:57:13
09:57:21
09:57:32
```

1  chat from July 21st from Mr. Peterson to Jane Doe reads as
2  follows: "I wish you could help me with my boner."
3           Jane Doe replies: "I will, Mr. Harls (phonetic
4  spelling)."
5           Mr. Peterson replies: "How you are not here?"
6           Jane Doe replies: "In due time."
7           Peterson responds: "Do you still want me to come
8  down and get you?"
9           Jane Doe asks in response: "And fuck me? What?
10 Yes, yes, fuck me."
11          The communications go on like that; and
12 essentially, those are the facts of the case, your Honor.
13          THE COURT: All right.
14          Mr. Peterson, did you hear Mr. Duke's discussion
15 of the facts related to this incident?
16          THE DEFENDANT: Yes.
17          THE COURT: Is it correct what he said about your
18 involvement?
19          THE DEFENDANT: Yeah.
20          THE COURT: To the charges in Count 1, how do you now
21 plead, guilty or not guilty?
22          THE DEFENDANT: Guilty.
23          THE COURT: Mr. Peterson, I find that you're competent
24 to enter a plea and that you are aware of the nature of the
25 charges against you and the consequences of entering a plea to

13

```
09:57:47
```

1  those charges.  I find that your plea is a knowing and a
2  voluntary plea supported by an independent basis in fact
3  containing each of the essential elements of the offense.  I
4  accept your plea, and you are now adjudicated guilty of the
5  charges in Count 1 of this indictment.
6              The dates that will control your sentencing
7  schedule are as follows:  The initial draft of the presentence
8  report shall be disclosed to counsel by October the 31st.
9  Counsel should file objections in writing or a statement that
10 there is no objection by November the 14th.  The probation
11 officer shall submit to me the final draft of your presentence
12 report by November the 28th.
13             I'm setting you for sentencing on December the
14 16th, 2013 --
15         THE CASE MANAGER:  3:00 o'clock.
16         THE COURT:  Let's make it later.
17         THE CASE MANAGER:  Yes, sir.
18         THE COURT:  We'll make it 4:45 right now.  It may
19 change but 4:45 p.m.
20             All right.  I'll remand you back to the custody
21 of marshal to be held pending your sentence.  Thank you.
22     (Proceedings concluded at 9:58 a.m.)

C E R T I F I C A T E

23     I certify that the foregoing is a correct transcript
from the record of proceedings in the above-entitled matter, to
24 the best of my ability.

25 By: /s/**Gayle L. Dye**                          **03-31-2014**
         Gayle L. Dye, CSR, RDR, CRR          Date
Gayle Dye, CSR, RDR, CRR - 713.250.5582