THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

* * * * *

UNITED STATES OF AMERICA     *     CRIMINAL NO. C-13-355
                               *     Corpus Christi, Texas
Vs.                           *     3:30 p.m. - 3:50 p.m.
                               *     3:59 p.m. - 4:00 p.m.
HARLEY MICHAEL PETERSON     *     February 18, 2014

* * * * *

**SENTENCING**

BEFORE THE HONORABLE JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE

* * * * *

**THIS TRANSCRIPT HAS BEEN FURNISHED AT PUBLIC EXPENSE
UNDER THE CRIMINAL JUSTICE ACT AND MAY BE USED ONLY AS
AUTHORIZED BY COURT ORDER. UNAUTHORIZED REPRODUCTION
WILL RESULT IN AN ASSESSMENT AGAINST COUNSEL FOR THE
COST OF AN ORIGINAL AND ONE COPY AT THE OFFICIAL RATE.
General Order 94-15, United States
District Court, Southern District of Texas**

Proceedings recorded by computer stenography
Produced by computer-aided transcription

*Edward L. Reed*
Court Reporter
9251 Lynne Circle
Orange, Texas 77630 * 409-330-1605

1  **APPEARANCES:**

2  For the United States of America:

3       MR. LANCE G. DUKE
         **United States Attorney's Office**
4        800 N. Shoreline Blvd., Suite 500
         Corpus Christi, Texas 78401

5  For the Defendant:

6
         MS. LILA MICHELLE GARZA
7        **Federal Public Defender's Office**
         606 N. Carancahua Street
8        Corpus Christi, Texas 78476-1707

9  Probation Office:

10       MARISSA GUTIERREZ

11  Court Reporter:

12       EDWARD L. REED

13

14

15

16

17

18

19

20

21

22

23

24

25

**P R O C E E D I N G S**

**3:30 P.M. – FEBRUARY 18, 2014**

1

2

3    THE COURT:  Next matter is C-13-355, *United*

4    *States of America vs. Harley Michael Peterson.*

5    Mr. Peterson, you're here to be sentenced

6    as a result of your pleading guilty to Count One, which

7    is enticement and coercion of a minor.  After you pled,

8    a Presentence Investigation Report was prepared and

9    delivered to your attorney.  Have you had a chance to

10    review that report with her before coming up here to be

11    sentenced?

12    DEFENDANT PETERSON:  Yes.

13    THE COURT:  There were no objections filed.  I

14    will therefore make the following findings:

15    Your Total Offense Level is 29, your

16    Criminal History Category is a Level 1.  I'll adopt

17    everything else in this report as my findings, and that

18    generates Guidelines of 120 months.

19    Ms. Garza, your comments, please?

20    MS. GARZA:  Your Honor, we would respectfully

21    yield to the Government, and I believe that there might

22    be a statement from the relative of DK, who's mentioned

23    in the Pre-Sentence Report, and speak after they have

24    had a chance.

25    THE COURT:  Okay.  Is there someone here that

1  wants to address the Court?

2      MR. DUKE:  No, Judge.  I've spoken to the

3  victim's relative, she's here, but she doesn't believe

4  she is capable of addressing the Court.

5      THE COURT:  Okay.  All right, very well.

6          Go ahead, Ms. Garza.

7      MS. GARZA:  Your Honor, the mandatory minimum

8  in this case is 10 years, so I recognize that the Court

9  cannot sentence Mr. Peterson below that, and we're

10  asking the Court to sentence him to exactly 10 years.

11  He is very young.  He is now 23 years old.  At the time

12  of this offense, he was 21.  He has fully cooperated

13  with law enforcement at every stage of the

14  investigation.  There was one paragraph that I

15  considered objecting to at one point, which I believe

16  is paragraph 18, which I know that the Court sometimes

17  entertains an objection to the two-level enhancement in

18  child pornography cases because --

19      THE COURT:  But it wouldn't have made any

20  difference.

21      MS. GARZA:  It wouldn't have made any

22  difference.

23      THE COURT:  Right, exactly.

24      MS. GARZA:  So he does take full responsibility

25  for his actions here in this case.

1        Reading the Presentence Report, I don't
2   think that the Court becomes familiar with any details
3   of this case, except what's been made available in the
4   Presentence Report.  And if you just look at what's only
5   in the Presentence Report, it's disturbing.  You know,
6   just part is some shock over the way sometimes young
7   people communicate.  And even older people communicate
8   using text messages and, you know, the technology that
9   we have now.
10        But I did want to let the Court know that
11  some of the messages that were in the Presentence Report
12  and that were included between Harley and DK are very
13  graphic and contain information that you probably
14  wouldn't want to know that a young teenager was taking
15  part in.  And I did want to make the Court familiar with
16  some other messages that were conveyed back and forth
17  between these two individuals and just reiterate or just
18  make clear that the difference in age between these two
19  people is six years -- was six years at the time, and
20  just point out some of the messages that were conveyed
21  between the two of them.
22        One of them was that they loved each other
23  at some point.  There were messages sent back and forth
24  between them, such as "I love you so much and I want to
25  spend the rest of our lives together."  There was a

1  message from Mr. Peterson that said, "I miss you and I

2  wish my phone would never die so I could talk to you a

3  long time," to which DK replied, "You're such a sweet

4  loving man, Mr. Harley. Any girl would be happy to have

5  you." So there is more to this relationship than just

6  what the messages --

7          THE COURT: Okay.

8          MS. GARZA: -- were indicated in the PSR.

9              And there were some ideas that were in

10 Mr. Peterson's head. Some intent that he had when he

11 came down here was, in effect, he -- this was a

12 misguided thought, but, you know, he had some intention

13 of coming down here and traveling to, in effect, save

14 her. One of the messages that was passed back and forth

15 between them was a long poem. It's very touching, but

16 that was written by DK, which basically stated that she

17 was very sad and had hurt herself and just felt very

18 hurt from things that were going on with her family

19 life. And at the end of the poem she states, "Harley,

20 are you listening?"

21             And so, just so that there was a little

22 bit more context to what was going on between these two

23 people, I wanted to present that to the Court.

24             Also, we're recommending that the Court

25 consider five years of supervised release. This isn't

1  something that -- I believe that this was something

2  specific to these two individuals, who happened to find

3  each other online, and that there is no indication

4  anywhere in there that Harley is a predator, and that

5  that will be sufficient as well.

6        THE COURT:  All right, Mr. Peterson, would you

7  like to say anything?

8        DEFENDANT PETERSON:  Yes.  I'm honestly really,

9  really sorry that it happened the way it did.  I do care

10  a lot about her.  The main reason why I came down was

11  because she kept stating that she wanted to kill herself

12  and I kept fighting with her on the phone trying to

13  explain to her, you know, "There is people who care about

14  you."  I didn't want to see her get hurt like that.

15        So that was my initial reason for coming

16  down.  Yeah, it doesn't excuse what did happen and I

17  wish I could take that back, I really do.  The only

18  thing I really can say is that I'm sorry about it

19        THE COURT:  You had some friends, I think, that

20  advised you against coming, didn't they, and you didn't

21  listen to them?

22        DEFENDANT PETERSON:  They were also friends

23  that would turn around and do you wrong in an instant.

24  That's why I wouldn't listen to them.

25        THE COURT:  Okay, all right.  Well, I wish you

1 had in this case.

2           DEFENDANT PETERSON:  So do I.

3           THE COURT:  Yeah.

4               Anything else you want to say?

5           MS. GARZA:  I would just also have the Court

6 take into account some of his background.  You know,

7 although, in my dealings with Mr. Peterson, he is very

8 intelligent, I do -- he does have some issues with his

9 mental health, as was indicated in the PSR, and some

10 issues with depression, anxiety, bipolar disorder, and

11 issues ranging all the way back until, I guess, when he

12 was like even 10 years old.  But just to take those

13 things into account.

14               You know, although he has to deal with

15 those issues and he is very intelligent, I don't feel

16 bad in saying that, emotionally, he isn't necessarily as

17 mature and, you know, some of the things that I came

18 across in doing discovery for this case, you know, make

19 me think that DK was actually, you know, more mature

20 emotionally when it came to some of the actions, such as

21 Mr. Peterson not being able to think through things,

22 like the money situation in coming down here to take

23 care of her.  DK was actually more responsible in

24 wanting to save the money so they could make it back to

25 Ohio where he was from.  So, you know, for Your Honor to

1  take those things into account, as well.

2          THE COURT:  Very well.

3              All right.  Mr. Duke, do you want to say

4  anything?

5          MR. DUKE:  I do, Your Honor.

6              First of all, let me start by saying I'm

7  only asking for the mandatory minimum of 120 months.

8          THE COURT:  Okay, right.

9          MR. DUKE:  But there are some things that were

10  said that I think just have to be addressed.  Someone

11  has to speak for the family side of things.  And

12  whatever Mr. Peterson's intentions were, what he

13  ultimately did was very harmful, and what he did was

14  more than -- I'll agree, is more than sort of what is

15  reflected here in the PSR.  There was this sort of

16  online relationship, but that relationship included

17  production of child pornography, because the two of them

18  were Skyping and displaying nude images of themselves

19  back and forth, which he then shared apparently with his

20  friends because the people we talked to up in Ohio said

21  they had seen the images that Mr. Peterson had received

22  from his child victim.  So there is distribution of

23  child pornography, as well.  We didn't recover those

24  images, so that's why it's not being prosecuted for

25  those today.  But there was more to the relationship, I

1  agree with defense counsel.

2          I totally disagree with defense counsel

3  with respect to what his intentions were.  It's quite

4  clear from the texts that we did recover that his

5  intentions were to travel to Texas, against the advice

6  of friends, to sexually assault the child.  His

7  intentions were not to save that child.  If that had

8  been the case, then when he picked the child up from

9  her home, he would have taken her to perhaps a run-away

10 shelter or to a police department or to a hospital.  But

11 instead, he actually takes her to a sleazy motel and

12 sexually assaults the child.  That was what

13 Mr. Peterson's intentions were and that's what is

14 literally the first thing that he did upon arriving in

15 Texas and stealing  her away from her home.

16          And I use the term stealing away because

17 this child, regardless of what her thought process was,

18 had no lawful right or legal right or really mental

19 capacity to understand what she was getting

20 herself into with this person whom she had only known

21 through the Internet.

22          So Mr. Peterson actually came and took her

23 from her family, causing them great fear and stress, as

24 any a parent would understand.  And then he went and did

25 what he did.

1          The suggestion that she is the aggressor
2  or is the more responsible party is disgusting.  She is
3  a child, he is the adult, and that's why he stands
4  before us today or before Your Honor, I should say,
5  with the charge that he has.  So I'm only asking for 10
6  years, but I don't want to lose sight of who
7  Mr. Peterson is and the harm that he has caused to this
8  family and to this victim.
9          I am asking for at least 10 years of
10 supervised release in addition to this.
11         THE COURT:  All right, very well.
12         MS. GARZA:  And Your Honor, just to make clear,
13 Mr. Peterson and I are in no way blaming DK for this
14 offense whatsoever.
15         THE COURT:  I understand.  Okay.  I did not
16 take your remarks in that regard.
17         MS. GARZA:  Yes, Your Honor.
18         THE COURT:  Mr. Peterson, a lot has been said
19 and a lot has been written in this report.  We're all
20 familiar with the facts, at least most of them, of what
21 happened.  It's a bad crime, you shouldn't have done it.
22 You should have listened to good advice from friends.
23 Whether they were the kind of people you would normally
24 rely on or not, they were giving you good advice in this
25 situation.  You should have known better.

1        Considering all the factors that I must, I
2 believe the minimum mandatory sentence is a sufficient
3 sentence.  I'm going to sentence you to 120 months.  But
4 I am going to put you on supervised release for 10
5 years.

6        While you're on supervision, you must
7 follow all the standard terms and conditions of
8 supervision which have been adopted by this Court, and
9 I'm going to go over several other special conditions
10 that this type of crime generates or mandates, so to
11 speak, for people that are being supervised.

12        First of all, you're going to have to
13 comply with all of the laws regarding sex offender
14 registrations.  You're going to attend sex offender
15 mental health counseling as directed by your probation
16 officer, as a special condition.  There is going to be
17 some prohibitions about you subscribing to any computer
18 online service or having access to any Internet device
19 during the length of your supervision, unless approved
20 by your probation officer.

21        You shall not work, reside, access or
22 loiter within a thousand feet of a school, playgrounds,
23 arcades, and other places primarily used by children
24 under the age of 18, unless approved in advance by your
25 probation officer.  You should not have any contact with

1  any minor child without being supervised by an adult

2  family member of the child.  And you should not date or

3  cohabit with anyone who has children under the age of 18

4  unless approved in writing in advance by your probation

5  officer.

6          You shall not have any contact with the

7  victim, DK, or her family, without prior consent from

8  your probation officer.  You shall not seek or maintain

9  employment, supervise, volunteer, or participate in any

10 program or activity where minors under the age of 18

11 would congregate, without prior approval of your

12 probation officer.  And you shall not view, possess, or

13 have under your control any nude depictions of children,

14 sexually oriented or sexually stimulating materials,

15 including visual, auditory, telephonic, or electronic

16 media.

17          And you will be required to participate in

18 a mental health program as deemed necessary and approved

19 by your probation officer.  And you will participate in

20 any kind of drug or alcohol treatment program as

21 directed by your probation officer.

22          It does not appear you can pay a fine.  I

23 will not order a fine.  You must, however, pay a special

24 assessment of $100.

25          I advise you at this time that you have

1  the right to appeal this sentence, and if you are unable

2  to hire a lawyer, the Court will appoint one for you.

3        Do you understand that you have right?

4        DEFENDANT PETERSON:  Yes.

5        THE COURT:  Mr. Duke, do you have anything

6  further?

7        MR. DUKE:  Judge, I'd like to request an

8  additional condition, that in the future while on SRT,

9  should he reside with a person who has minor children,

10  that the non-custodial parent of those children be

11  advised of Mr. Peterson's conviction.

12        THE COURT:  I will also amend my previous

13  findings and order that also.

14        MR. DUKE:  Thank you, Judge.

15        THE COURT:  Okay.

16        Ms. Garza, do you have anything further?

17        MS. GARZA:  No, Your Honor.

18        THE COURT:  Good luck to you.

19        *[3:50 p.m. - 3:59 p.m. - Another matter was*

20  *heard, after which were the following proceedings:]*

21        MS. GARZA:  Your Honor, may I approach on

22  *United States vs. Harley Peterson?*

23        THE COURT:  Sure.

24        MS. GARZA:  I just neglected to ask the Court

25  for a placement recommendation.

```
 1          THE COURT:  Oh, sure, okay.  Where do you want
 2    him to be placed?
 3          MS. GARZA:  Texas.
 4          THE COURT:  (Addressing Probation Officers)
 5    Would one of you, whoever is doing the judgment over
 6    there on Peterson, put a recommendation that he be
 7    placed in a facility in Texas?  They may put him at a
 8    particular BOP facility, though, for offenders of that
 9    type, so I don't if that --
10          MS. GARZA:  Yes, sir, we're aware of that.
11          THE COURT:  Explain that to him because he may
12    not get it.
13          MS. GARZA:  Yes, sir.
14          THE COURT:  Okay.
15          [4:00 p.m. – Proceedings adjourned]
16
17                    REPORTER'S CERTIFICATE
18
19    I certify that the foregoing is a correct transcript from
20    the record of proceedings in the above-entitled cause.
21
22    /s/ Ed Reed                          4-5-14
      Edward L. Reed                       Date
23    Official Court Reporter
24
25
```